WILLIAM R. FOSTER AND OTHERS *against* AMELIA M. C. PERSCH.

(Decided November 1st, 1875.)

Defendant's husband, with her concurrence, and in order to conceal his property from his creditors, carried on business in her name, but in reality for his own benefit. The plaintiffs, knowing these facts, sold goods on credit to be used in the business, and the defendant's husband, who acted as her agent in buying the goods, told the plaintiffs to charge the goods to him or to the defendant, as they choose, and the plaintiffs, after consultation, charged the goods to the defendant's husband. *Held*, that this was an election by the plaintiffs to accept the defendant's husband and agent as principal in the transaction, which they could not revoke, and that a finding by a referee in an action against the defendant for the price of the goods, that the plaintiffs, by so doing, " did not intend to exonerate the defendant from liability therefor," was erroneous.

APPEAL by defendant from a judgment of this court for $1,101 99, entered on the report of George M. Van Hoesen, Esq., appointed referee to hear and determine the issue.

The action was brought to recover from the defendant, for goods sold and delivered to her, of the value of $618 52. The answer was a general denial, and the proofs offered by the defendant on the trial went to show that the goods had been sold and delivered to the defendant's husband, and not to her, and that the credit had been given to him. The findings of the

referee on this point, and the evidence on which they were based, are stated in the opinion.

*August Reymert*, for appellant.

*William R. Foster, Jr.*, for respondent.

ROBINSON, J.—Upon the conflicting proofs, the referee was warranted in finding, as a matter of fact, that the baking business carried on by defendant's husband was conducted in her name as owner, with her concurrence. The use of her name was, however, manifestly but a cover to allow him to transact business for his own benefit, under the protection of her name, so as to avoid the claims of his creditors.

The only question the case presents for serious consideration is whether the plaintiffs having, under the circumstances disclosed by the testimony, and with full knowledge of the assumed position of Frederick W. Persch as agent of the defendant, his wife, in making the purchase, elected to charge the goods sold and give the credit exclusively to the husband, can avoid the legal force and effect of that act, and enforce their rights as creditors for the goods sold against the separate estate of the wife?

The referee finds, as matter of fact, that in so charging the goods to him they "did not intend to exonerate the defendant from liability therefor," and in this he erred.

The law regards them as having intended the legal consequences of their act, and while ordinarily in a sale made through an agent of a purchaser, the legal presumption is that credit is given to the principal, though charges in the books of the vendor made against the agent, his relation being known, are strong evidence that the credit was given to him, they are yet but private memoranda of the vendor, and are not conclusive evidence that it was given *exclusively* to him (*Meeker* v. *Claghorn*, 44 N. Y. 352). In the present case the testimony makes it appear clearly that the credit was exclusively given to the assumed agent. He had previously carried on the business and bought goods from the plaintiffs for that purpose. On commencing to make purchases under this new assumed relation of his wife, he informed Mr. Dewey, one of the plaintiffs, to whom he applied

for a further purchase of goods, " that he had got into trouble, and put all his property into his wife's hands ; she was going to carry on the bakery, and she wanted some goods; he said he had, as much money as ever, and it would be all right. We (plaintiff Dewey and the husband), consulted together. I asked Mr. Persch if he wanted us to charge the goods to his wife ; he said ' yes ; but it did not make any difference.' He also brought down an old pass-book that he had, and I told him that I would charge the goods to him," which was so done on their books.

It seems clear from these facts disclosed by the testimony of one of the plaintiffs, that they were apprised of the covert (if not fraudulent) design of Persch to carry on the business for his own benefit, though ostensibly in the name of his wife, that he had as much money as ever, and it made no difference to whom the goods were charged, and after consultation they elected to charge the goods to him (*Prisley* v. *Fermi*, 3 Hurlst. & Colt. 977 ; *Rowan* v. *Balleman*, 1 Daly, 415). It cannot be questioned that Persch thus, by agreement with plaintiff, became legally bound as *the debtor*, and that they deliberately elected him as such. The transaction admitted of no vicarious transfer of such liability from mere caprice or subsequent change of intention on the part of the plaintiffs. The rights of the parties thus became fixed, and even if the plaintiffs, at the time of the sale of the goods in question, entertained any said intention (such as is found by the referee), " not to exonerate the defendant from liability therefor," they then evinced no such intention, but by their deliberate acts concluded themselves from treating any one but Persch, the husband, their then acknowledged debtor, as liable for the goods thus sold and delivered. Upon these considerations the finding of the referee that defendant ever became indebted to the plaintiffs was erroneous, and the judgment should be reversed and a new trial ordered, with costs to the defendant to abide the event.

CHARLES P. DALY, Ch. J., and LARREMORE, J., concurred.

Ordered accordingly.